## BOOHER v. THE STATE.

[No. 19,531.    Filed April 16, 1901.]

CRIMINAL LAW. — *Conspiracy.* — *Assault and Battery.* — *Intent.* — *Drunkenness.* — *Evidence.* — In a prosecution for an assault and battery with intent to commit murder, and for entering into a conspiracy with intent to commit murder, the intoxication of defendant is admissible in evidence for the consideration of the jury in determining whether defendant actually entertained the specific intent essential to the crime charged.

From the Kosciusko Circuit Court.    *Reversed.*

*L. R. Stookey* and *A. F. Biggs,* for appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores, C. C. Hadley* and *H. W. Graham,* for State.

JORDAN, J.—The information upon which appellant was tried and convicted contains three counts. By the first and second appellant is charged, together with two other parties, Stanton Galbreath and Emory Bennett, with having committed an assault and battery upon William Rafter, with the felonious intent to commit murder in the first degree. The third count charges him and four other persons, namely, Galbreath, Bennett, Wagoner, and Dudley, with unlawfully, knowingly, and feloniously conspiring, uniting, and confederating together and agreeing with each other for the object and purpose and with the unlawful and felonious intent unlawfully, feloniously, wilfully, purposely, and with premeditated malice, to kill and murder said Rafter, etc. The first and second counts of the information are based on §1982 Burns 1894, §1909 Horner 1897, which reads as follows: "Whoever perpetrates an assault or an assault and battery upon any human being, with intent to commit a felony, shall, upon conviction thereof, be imprisoned in the state prison not more than fourteen years nor less than two years, and be fined not exceeding $2,000 dollars." The third count is based on §2260 Burns 1894, §2139 Horner

1897, which provides as follows: "Any person or persons who shall unite or combine with any other person or persons for the purpose of committing a felony; or any person or persons who shall knowingly unite with any other person or persons, or body or association or combination of persons, whose object is the commission of a felony or felonies, shall, upon conviction thereof, be fined in any sum not more than $5,000 nor less than $25, and imprisoned in the state prison not more than fourteen years nor less than two years."

Upon appellant's motion he was tried separately and the case against him was submitted to a jury for trial upon the several counts contained in the information and a verdict was returned finding appellant guilty of the conspiracy as charged in the third count of the information, and over his motion for a new trial he was sentenced by the court upon the verdict of the jury to be imprisoned in the state's prison for an indeterminate period of not less than two years nor more than fourteen years. From this judgment he appeals, and under his assignment of errors his counsel contend that the trial court erred in giving certain instructions to the jury and that the verdict is not sustained by the evidence. The following may be said to be an epitome of the evidence: On the night of March 10, 1900, appellant, John Booher, Stanton Galbreath, Emory Bennett, Ray Wagoner, Lorenzo Dudley, and William Rafter, the prosecuting witness, together with others, were in Hammer's saloon, in the town of Pierceton, Kosciusko county, Indiana. There is no evidence to show that the meeting of these parties was arranged by any of them, but it appears that they came together casually at the saloon in question. Rafter, it seems, had been at Warsaw during the day, and had been drinking prior to his coming to Hammer's saloon. A short time after he came into the saloon a controversy seems to have arisen between him and Ray Wagoner in regard to a former difficulty or fight which occurred between Rafter and another party. Rafter claimed that he was drunk at the time.

that he had the fight with the party mentioned and that for that reason his adversary had succeeded in getting the best of him.   Wagoner proffered to bet him money that what he asserted was not true.   The controversy between these parties became so heated that the bartender directed Rafter to leave the saloon.   He seems to have complied with this direction and went out of the saloon by the front door but went around and stood at a side door which led into the saloon.   Wagoner upon learning that Rafter was standing at the side door went to this door and accused the latter of eavesdropping, and some further controversy was indulged in between the two parties in respect to the matter which previously had occasioned the quarrel between them in the saloon.   After this last controversy Rafter left and went to where his horse was tied, a block or more distant from the saloon.   He mounted his horse and apparently started in the direction of his home, but after riding around town for a short time he went to a livery stable, where he procured a piece of cloth and wrapped or tied it around a stone, and then went to a pool-room adjoining to Hammer's saloon. Appellant, Galbreath, and Wagoner and other persons, as it appears, were in the pool-room when Rafter entered and they all remained there while Rafter played two games of pool.   No words appear to have passed between Rafter and the other parties and no demonstration of any kind took place.   Rafter and the keeper of the pool-room, during the time the former was playing, had some words in regard to the payment for the use of the pool-table.   It being then time for the pool-room to close, all of the parties went out on the street, Rafter and Wagoner going down the middle of the street, and the other persons who composed the crowd in the pool-room seem to have followed along the sidewalk after Rafter and Wagoner.   In regard to the question as to whether Wagoner followed after Rafter down the street, or walked by his side, the evidence is conflicting.   Rafter, after arriving at the place where his horse was hitched to a rack,

jumped down from the sidewalk into a gutter. Wagoner then said to Rafter: "You get on your horse quick, and get out of town". Upon the trial Rafter testified that after Wagoner had directed him to get on his horse and leave town as above stated, that Wagoner struck at him, and that he in return knocked Wagoner down with the stone which he had tied in the rag, as heretofore mentioned.. Wagoner testified, upon the other hand, that Rafter struck the first blow and knocked him down, and that he struck or stabbed Rafter in self-defense. After Wagoner had been knocked down by Rafter, the latter states that he heard him say to the persons who were following him: "Come on, we'll catch him and kill him". Thereupon Rafter started and ran, followed by Wagoner and several other persons, and while he was running Wagoner stabbed him several times in the back with a knife, and while running he was knocked down by some one whose name the evidence does not disclose. After Rafter was knocked down, the evidence shows that appellant got on top of him and that Rafter threw him off and got up. When Rafter rose up he states that he saw Galbreath standing over him or near him with a club drawn. The wounds which Rafter received at the hands of Wagoner were severe but not dangerous. There is also evidence to show that after the first quarrel in the saloon between Rafter and Wagoner appellant said to the latter: "Why didn't you hit him? I would have stood by you if you had." There is evidence which apparently shows that Wagoner and Rafter were both willing to have trouble with each other and that neither was trying to avoid it. There is no evidence showing any enmity or ill feeling between Rafter and any of the parties prior to the meeting at Hammer's saloon. Evidence was introduced in behalf of appellant which discloses that he had been freely drinking intoxicating liquors prior to and after the time that Rafter came into the saloon on the night in question. Some witnesses testified that he was very drunk on the occasion, and that they saw him previous to the

time that Rafter came into the saloon and that he was so drunk that he was leaning over with his head resting upon a table in Hammer's saloon.   Other witnesses testified that appellant, previous to this assault upon Rafter, was so drunk that he staggered.   Another testified that immediately after the assault upon Rafter he assisted appellant to get home and that he was so drunk that he fell down on the way home.

The court on its own motion gave to the jury upon the question of appellant's intoxication the following instruction, which was the only one given upon that feature of the case:  "Voluntary intoxication will not excuse crime.  If the defendant Booher was drunk, it was his own fault, and he can not claim any immunity by reason of his intoxication. It was his duty to keep sober, and if he voluntarily permitted himself to become intoxicated, and while so intoxicated he committed the crime charged in any form, he is guilty, and should be punished precisely the same as though he had been sober.  It is not the law that a man may voluntarily become intoxicated, and commit crime, and escape punishment by reason of such intoxication, but upon the other hand it is the law that he cannot use his own voluntary intoxication to escape the consequences of his acts while so intoxicated." Counsel for appellant contend that the court in giving this charge clearly erred, to the prejudice of the accused.   They concede that while voluntary intoxication is no excuse for the commission of a crime, nevertheless they insist that it may be considered where the essence of the crime depends upon the intent with which the act is done, or where an essential element of the crime consists in doing an unlawful act with deliberation and premeditated purpose.   Under such circumstances it is insisted that the mental condition of the accused, whether occasioned by voluntary intoxication or otherwise, is an important factor to be considered by the court or jury trying the case.

The contention of appellant's counsel upon the question involved is supported by the decision of this court in *Aszman*

v. *State,* 123 Ind. 347, 8 L. R. A. 33. The defendant in that case was charged with murder in the first degree: ' The lower court refused to charge the jury that voluntary intoxication upon the part of the defendant. might be considered to reduce the offense from the highest to the lower grade of murder. In that appeal this court by Mitchell, C. J., after reviewing many authorities in respect to the effect of voluntary intoxication on the part of a person accused of a criminal offense, said: "As a matter of course the rule is universal that voluntary intoxication is no excuse for crime, nor does it in any degree mitigate or palliate an offense actually committed. To hold otherwise would unbridle crime and subvert public order. On the contrary, where there is reason to believe that one has conceived the design to commit a crime, and while harboring the unlawful purpose, voluntarily becomes intoxicated in order to blunt his moral sensibilities and nerve himself up to the execution of his preconceived design, the offense is thereby greatly aggravated. *State* v. *Robinson,* 20 W. Va. 713, 43 Am. Rep. 799. Where, however, the essence of a crime depends upon the intent with which an act was done, or where an essential ingredient of the crime consists in the doing of an unlawful act, with a deliberate and premeditated purpose, the mental condition of the accused, whether that condition be occasioned by voluntary intoxication or otherwise, is an important factor to be considered. [Citing authorities.] Thus in *Cline* v. *State,* 43 Ohio St. 332, 1 N. E. 22, the learned judge, delivering the judgment of the court, said: "Where a person having a desire to do to another an unlawful injury, drinks intoxicating liquors to nerve himself to the commission of the crime, intoxication is held, and properly, to aggravate the offense; but at present the rule that intoxication aggravates crime is confined to cases of that class. * * * But in many cases evidence of the intoxication is admissible with a view to the question whether a crime has been committed, or where a crime, consisting of degrees, has

Booher *v.* State.

'been committed,' such evidence may be important in determining the degree.' "

In *Smurr* v. *State,* 88 Ind. 504, the offense charged was murder in the first degree. An instruction which advised the jury that "Voluntary intoxication is no excuse for crime as long as the offender is capable of conceiving an intelligent design" was approved as a correct expression of the law.

In the case of *Crosby* v. *People,* 137 Ill. 325, 27 N. E. 49, the defendant was indicted for an assault with intent to murder. The question arose in regard to his intoxication at the time of the alleged assault. The trial court in its charge to the jurors instructed them, in effect, that voluntary drunkenness was no excuse for the commission of any crime or misdemeanor, and that this ruling applied although the intoxication was so extreme as to make the accused unconscious of what he was doing. On appeal the supreme court held that the instruction as applied to that case was erroneous. After citing authorities to show that under the rule asserted at common law voluntary drunkenness was no excuse or extenuation for crime committed under its influence, and that the same rule prevailed under the statutes of Illinois, it is said: "It will be observed that all the cases hold, as our statute provides, that drunkenness is not an excuse for crime, and yet the uniform holding is, that where a particular intent is charged, and such intent forms the gist of the offense, as contradistinguished from the intent necessarily entering into every crime,—as, where one crime is thereby aggravated into a higher crime, or a misdemeanor enlarged into a felony,—any cause which deprives the defendant of the mental capacity to form such an intent will be a defense to the graver crime. * * * Drunkenness was, therefore, at common law, as under our own statute, no excuse for crime, but where the nature and essence of the offense is, by law, made to depend upon the state and condition of the mind of the accused at the time, and with refer-

ence to the acts done and committed, drunkenness, as a fact affecting the control of the mind, is proper for the consideration of the jury, for if the act must be committed with a specific intent, to constitute the crime charged, and the defendant is incapable of forming any intent whatever, the offense has not been committed. The drunkenness is no excuse for any act done or committed. The defendant may be punished for the consummated offense, whatever it may be; and the want of mind operates, not by way of excuse for crime committed, but renders the accused incapable of committing the graver offense."

In *State* v. *Garvey*, 11 Minn. 154, the defendant was indicted for an assault with an intent to do great bodily harm, under a statute which provided that "If any person being armed with a dangerous weapon shall assault another with intent to do great bodily harm, he shall be punished," etc. The intoxication of the accused was involved, and the supreme court in reviewing the ruling of the lower court upon that feature of the case, said: "It does not appear that Garvey became intoxicated with a view to the commission of the crime, or that before his intoxication he had any intention of committing such crime. The existence or nonexistence of the malicious and felonious *intent* charged was the principal question to be passed upon by the jury. If Garvey was so drunk as *'not to know what he was doing,'* then he had no intention; he was incapable of forming any intention, and any evidence showing this fact should have been admitted by the court."

In *Mooney* v. *State*, 33 Ala. 419, the charge was assault with intent to commit murder. The court in that appeal, after holding that the specific intent to commit murder as charged was an essential ingredient of the crime, and that such intent must be proved as charged, said: "Drunkenness certainly does not excuse or palliate any offense. But it may produce a state of mind, in which the accused would be totally incapable of entertaining or forming the positive

and particular intent requisite to make out the offense. In such a case, the accused is entitled to an acquittal of the felony, not because of his drunkenness, but because he was in a state of mind, resulting from drunkenness, which affords a negation of one of the facts necessary to his conviction." Citing the following authorities: American Crim. Law, §41; Wharton's Law of Homicide, 368; *Pigman* v. *State,* 14 Ohio 555; *Swan* v. *State* (Tenn.), 4 Humph. 136; *Pirtle* v. *State* (Tenn.), 9 Humph. 663; *Pennsylvania* v. *McFall* (Pa.), Addison 255; *United States* v. *Roundenbush,* 1 Baldwin, 514; *Haile* v. *State* (Tenn.), 11 Humph. 153.

In *Whitten* v. *State,* 115 Ala. 72, 22 South. 483, the defendant was indicted and convicted for an assault with intent forcibly to ravish. The trial court refused to charge that if the jury had a reasonable doubt arising out of the evidence as to whether the accused was sufficiently sober to form the specific intent to ravish, then the jury could not find him guilty of an assault with such an intent. The court in that appeal upon the question said: "We are of opinion the charge should have been given. In order to convict under the statute for an assault with intent to ravish, it is necessary to satisfy the jury beyond a reasonable doubt, that the defendant entertained the specific intent charged and made the assault to accomplish the specific purpose. Mere drunkenness does not excuse or palliate an offense, but it may produce a state of mind, which incapacitates the party from forming or entertaining a specific intent. If the mental condition is such that a specific intent can not be formed, whether this condition is caused by drunkenness or otherwise, a party can not be said to have committed an offense, a necessary element of which is, that it be done with a specific intent. * * * The condition of the defendant's mind, arising from his voluntary drunkenness, was no excuse for the assault, an offense included in that charge. It can only be considered upon the question of his guilt of the

statutory offense for which he was indicted, to wit, an assault with intent forcibly to ravish, which involves the condition of the defendant's mind."

In Chrisman v. State, 54 Ark. 283, 15 S. W. 889, the defendant was also convicted of an assault with intent to murder. The court in that appeal, upon the question of his intoxication, said: "But as the case must be remanded, we think it proper to say that although voluntary drunkenness cannot, as the jury were told by the court, excuse the commission of a criminal act; yet, where a person is accused of a crime such as can be committed only by doing a particular thing with a specific intent, it may be shown that at the time of doing the thing charged the accused was so drunk that he could not have entertained the intent necessary to constitute the offense."

In Reagan v. State, 28 Tex. Civ. App. 227, 12 S. W. 601, the accused was charged with having perpetrated an assault with intent to commit rape. It was held in that appeal that evidence, which tended to show that when the accused made the attempt he was excessively drunk, fairly raised the question of his mental capacity to conceive the criminal intent, and demanded of the trial court a charge to the effect that in determining whether he had the specific intent to rape at the time he made the attempt the jury should take into consideration the evidence of his drunkenness, and his consequent mental capacity to form such intent. The court in conclusion said: "Appellant is not to be held responsible for the intent if he was too drunk for a conscious exercise of the will to the particular end; or, in other words, too drunk to entertain the intent, and did not entertain it in fact. If he did in fact entertain it, though but for the intoxication he would not have done so, he is responsible for the intent as well as for the acts."

In Roberts v. People, 19 Mich. 401, the defendant was charged with an assault with intent to commit murder. The trial court instructed the jury to the effect that his volun-

tary intoxication at the time of the assault would not excuse him. The supreme court in that appeal in reviewing the rulings of the lower court said: "In determining the question whether the assault was committed with the intent charged, it was therefore material to inquire whether the defendant's mental faculties were so far overcome by the effect of intoxication, as to render him incapable of entertaining the intent. * * * But he is not to be held responsible for the intent, if he was too drunk for a conscious exercise of the will to the particular end, or, in other words, too drunk to entertain the intent, and did not entertain it in fact. If he did entertain it in fact, though but for the intoxication he would not have done so, he is responsible for the intent as well as the acts."

In *Warner* v. *State*, 56 N. J. L. 686, 29 Atl. 505, the defendant was convicted in the lower court of murder in the first degree. Upon appeal, in considering the question of intent or design to kill involved under the evidence in that case, the court said: "Design to kill was a fact. A reasonable doubt of the existence of that fact might spring out of the drunkenness of defendant, or out of any other circumstance or combination of drunkenness with other circumstances. * * * The general proposition is that drunkenness is no excuse for crime. The reasoning upon which, in those states in which murder is distinguished by degrees, drunkenness is permitted to modify the degree of the crime, rests upon one requirement essential to constitute murder in the first degree. This rquirement is the existence of actual, specific malice—of an actual intent to take life. Without this there is no crime in that degree. Any condition of fact, whether drunkenness or other circumstance, which shows the non-existence of this kind of actual malice, is relevant, not as an excuse for crime, but as showing that no statutory crime at all of the degree named was committed. * * * The exceptional immunity extended to the drunkard is limited to those instances where the crime involves a

specific, actual intent. When the degree of intoxication is such as to render the person incapable of entertaining such intent, it is an effective defense. If it falls short of this it is worthless."

In 1 Bishop's New Crim. Law, §413, the author says: "An indictable attempt is committed only when the intent is specific; namely, to do the particular thing which constitutes the substantive crime. If, therefore, one is too drunk to entertain such specific intent, he can not become guilty of the offense of attempt; however culpable in a general way he may be for his drunkenness."

Other authorities of like import might be cited in support of the doctrine for which appellant contends; those mentioned will suffice to disclose for what purpose the intoxication of the defendant on trial upon a criminal charge which involves a specific, actual, intent, may be admitted in evidence and considered in his behalf. The intoxication of an accused person, under such cases, is not admissible, upon the ground that it of itself excuses or palliates the crime, but is admitted and considered only for the purpose of ascertaining the condition of the mind of the accused, in order to determine whether he was incapable of entertaining the specific intent charged, where such intent, under the law, is an essential ingredient of the particular crime alleged to have been committed; hence, where a homicide has been charged to have been committed with premeditated or deliberate intent, the drunkenness of the defendant may be considered as tending to show, under all the circumstances in the case, that the less, and not the greater, homicide was committed. In all criminal cases where the intent of the accused is an essential element, such intent becomes a question of fact to be determined by the jury or court trying the case upon a consideration of all the evidence. In fact the rule seems to be universally asserted by the authorities, that in all prosecutions for an assault with intent to kill, the intoxication of the defendant is admissible in evidence, and

should be considered by the jury or court trying the case in determining whether he actually entertained the specific intent essential to the crime charged. In addition to the authorities heretofore cited, see, 17 Am. & Eng. Ency. of Law (2nd ed.) 411. It does not follow, by any means, in any criminal case, in which the intoxication of the accused person may be considered in evidence, that the fact that at the time he committed the alleged crime he was intoxicated, he was thereby rendered incapable of entertaining the specific felonious or criminal intent with which he is charged. He may have been grossly intoxicated and yet capable of forming the intent to kill and murder or to commit any other offense in which an intent is an essential element. The correct rule or test in such cases, and the one generally asserted by the authorities, is that the drunkenness of the defendant, in order to rebut such criminal intent, must be of such a degree as to deprive him of the power to deliberate or form the necessary design or guilty intent; otherwise it is not available. Or, in other words, as affirmed in *Aszman* v. *State,* 123 Ind. 357, 8 L. R. A. 33, mere intoxication of the accused, in the absence of such mental capacity resulting therefrom as will render a person incapable of thinking deliberately and meditating rationally, in forming the guilty design or intent, can not be regarded as sufficient. There must be, as a result of such intoxication, the absence of that self-determining power which in a sane mind makes it conscious of the real nature of its own purpose, and capable of resisting wrong impulses. Of course all reasonable doubts arising upon such question or issue must be solved in favor of the accused party. Neither is the drunkenness of the defendant available if the criminal design or intent with which he is charged, was formed or entertained before he became intoxicated, during the state of which he carries his intent so formed into effect. It may be further said, in reference to the question of the intoxication of persons accused of the commission of crime, that the law has

due regard for the safety of society, and as such safety to a great extent depends upon the due administration of our criminal laws, hence, voluntary intoxication of one at the time he is charged to have violated such laws ought to be most cautiously considered by the jury before arriving at a conclusion that his intoxication rendered him mentally incapable of committing the alleged crime. The specific intent of the appellant in the case at bar to commit the murder as charged under either count of the information, was, under the statutes upon which these counts were respectively based, an essential element or ingredient of the offense, and the existence or non-existence of such felonious intent was one of the principal questions to be decided by the jury. In fact, in entering into or forming a conspiracy, under the statute, there must be a concert of will between or among the conspirators, as well as the intention or purpose to commit the particular felony. Under either the first or second count of the information, in the event the evidence justified, appellant might have been convicted of the assault and battery with intent to commit murder in either the first or second degree or voluntary manslaughter. *State* v. *Throckmorton,* 53 Ind. 354; *Jarrell* v. *State,* 58 Ind. 293; *Behymer* v. *State,* 95 Ind. 140.

It was also within the province of the jury upon either the first or second count, if warranted by the evidence, to have acquitted appellant of the felonious intent and convicted him of assault and battery only. *Gillespie* v. *State,* 9 Ind. 380; *Behymer* v. *State, supra; State* v. *Hattabough,* 66 Ind. 223; §1904 Burns 1894.

Applying the principle so fully and generally supported by the authorities to which we have referred, it becomes manifest that the intoxication of appellant, which was admitted in evidence, ought to have been considered by the jury for the purpose of rebutting the felonious intent to kill and murder the prosecuting witness, with which, as charged under the first and second counts, he committed the assault and battery, and, under the third count, with which, he en-

Booher *v.* State.

tered into the conspiracy in question. By the instruction in dispute, the trial court, in effect, at least, virtually withdrew or excluded from the jury the consideration of the intoxication of appellant for any purpose. We must assume that the evidence in respect to his intoxication was admitted for the only purpose for which it was legitimately admissible. It could neither be received nor considered for the purpose of excusing or palliating the crime alleged to have been committed, and, under the circumstances, the charge which the court gave upon that question may be said to have been wholly inapplicable to the evidence, and must at least have tended to mislead the jury. It was, of course, proper for the court to have advised the jury in respect to the abstract proposition that appellant's drunkenness was no excuse or palliation for the crime charged, but the instruction went beyond this, and advised them that if appellant was intoxicated when he committed the crime charged "in any form" he was guilty, and should be punished, etc. The guilt of appellant in respect to the particular crime imputed to him was the essential question propounded to the jury, to be decided upon the consideration of all the evidence in the case, and his intoxication was a matter for the jury to consider in determining the question of the existence of the felonious intent, an essential element of the crime of which he was accused. As to whether his intoxication was in such a degree as to render him mentally incapable of forming or entertaining the design or intent to commit the felony charged, was, as previously stated, solely a question of fact to be determined from all of the evidence in the case. It follows that the court erred in giving the instruction in controversy, for which error the judgment is reversed, and the cause remanded to the lower court, with instructions to grant appellant a new trial. The clerk will issue the proper warrant to the warden of the state prison for the return of the prisoner to the custody of the sheriff of Kosciusko county.