## SABENS v. UNITED STATES.

HOMICIDE; INTOXICATION; MALICE; PREMEDITATION; CHARGE TO JURY; QUESTIONS FOR JURY; EVIDENCE.

1. While intoxication constitutes no excuse or justification for crime (citing *Harris* v. *United States*, 8 App. D. C. 20, 36 L.R.A. 465, and *Lankton* v. *United States*, 18 App. D. C. 348), where the very essence of the crime is made to depend upon the condition of mind at the time of the offense, it is a proper subject of consideration in the determination of the question whether a particular crime has been committed.

2. While implied malice at common law was sufficient to make an offense murder, under secs. 799 and 800, Code, D. C. [31 Stat. at L. 1321, chap. 854], which require proof of actual malice, implied malice constitutes murder in the second degree.

3. A slayer who formed a deliberate and premeditated design to kill, and, in pursuance thereof, voluntarily got drunk for the purpose of nerving himself for its accomplishment, cannot, where the statute requires an intent to commit murder at the time of the commission of the offense, be convicted of murder in the first degree, if, at the time of the killing, he was so drunk as to be unable then to deliberate upon and premeditate the murder. (Construing secs. 799 and 800, Code, D. C.)

4. It is error to qualify a special instruction asked in a homicide case to the effect that the weight of evidence as to the accused's intoxication

is for the jury, by adding that such evidence should be received with caution and carefully examined, in connection with all the circumstances of the case, since the qualification in effect tells the jury that such evidence should be weighed by a standard different from that applied to other evidence.

5. Evidence of the finding, about a year after the homicide, of a saw in a cell occupied by the accused and another prisoner, and to which others had access, is not admissible as tending to show his sanity, in that it indicates his capability of planning an escape, and was hence not insane.

No. 2500.  Submitted May 5, 1913.  Decided May 26, 1913.

HEARING on an appeal by the accused from a judgment of the Supreme Court of the District of Columbia, convicting him of murder.                                              *Reversed.*

The COURT in the opinion stated the facts as follows:

The appellant, William H. Sabens alias Willie H. Sabens, was convicted in the supreme court of the District of murder in the first degree and sentenced to death.

The evidence in behalf of the defendant tended to show that he was suffering with an incurable form of insanity at the time of the commission of the offense, and, further, that he was then completely under the influence of liquor. The government met this evidence with evidence tending to show that the defendant was perfectly sane and in possession of his faculties at the time of the homicide.

At the request of the government the court charged the jury that they should find the defendant guilty of murder in the first degree even though he was intoxicated at the time of the killing, if they should find beyond a reasonable doubt that he formed a deliberate and premeditated design to kill the deceased, and, in pursuance of such design, "voluntarily made himself drunk for the purpose of nerving himself for the accomplishment of the design, and then went to the house referred to in the proof, and there met the subject of his malice *when he was so drunk as not then to be able to deliberate on and*

*premeditate the murder,* and killed the deceased in pursuance of such deliberate and premeditated design previously formed." To the granting of this charge the defendant duly excepted.

*Mr. T. Morris Wampler* and *Mr. R. C. L. Moncure* for the appellant.

*Mr. Clarence R. Wilson,* United States District Attorney, and *Mr. S. McComes Hawken,* Assistant United States Attorney, for the United States.

*Mr.* Justice ROBB delivered the opinion of the Court:

Sec. 798, subchapter 1 of chapter 19 of the Code [31 Stat. at L. 1321, chap. 854], dealing with "Crimes and Punishments," defines murder in the first degree as follows: "Whoever, being of sound memory and discretion, purposely, and either of *deliberate and premeditated malice* or by means of poison, or in perpetrating, or in attempting to perpetrate, any offense punishable by imprisonment in the penitentiary, kills another, is guilty of murder in the first degree." The placing of an obstruction on a railroad with intent to endanger the passage of any locomotive or car, and when death ensues, is also made murder in the first degree by sec. 799. Sec. 800 prescribes that "Whoever with malice aforethought, *except as provided in the last two sections,* kills another, is guilty of murder in the second degree." It thus appears that Congress has established two degrees of murder in this jurisdiction, one punishable by death, and the other by imprisonment for life, or not less than twenty years. To constitute murder in the first degree the act must have been committed wilfully, deliberately, maliciously, and premeditatedly; and these concomitants are presumed to have been present when poison was intentionally administered, or when the killing resulted from the perpetration, or attempted perpetration, of any offense punishable by imprisonment in the penitentiary, or when death ensued from the placing of an obstruction on a railroad with the above-men-

tioned intent. In other words, a deliberate intent to take life is declared to be an essential element of murder in the first degree, and this, of course, must be shown as a fact. While implied malice at common law was sufficient to make an offense murder, under our statute, which requires proof of actual malice, implied malice constitutes murder in the second degree.

While intoxication constitutes no excuse or justification for crime (*Harris* v. *United States,* 8 App. D. C. 20, 36 L.R.A. 465 ; *Lankton* v. *United States,* 18 App. D. C. 348), nevertheless, when the very nature and essence of the crime is made to depend upon the condition of mind at the time, the *fact* of intoxication is a proper subject of consideration in the determination of the question whether a particular crime has been committed. Thus, in *Hopt* v. *Utah,* 104 U. S. 631, 26 L. ed. 873, 4 Am. Crim. Rep. 365, it was held that under a statute establishing degrees of murder, evidence that the accused was intoxicated at the time of the killing is competent for the consideration of the jury upon the question whether he was in such a condition of mind as to be capable of deliberate premeditation. In that case the trial court was asked to charge the jury to the effect just indicated. This the court refused to do, but did say to the jury that "a man who voluntarily puts himself in a condition to have no control of his actions must be held to intend the consequences. The safety of the community requires this rule. Intoxication is so easily counterfeited, *and when real is so often resorted to as a means of nerving a person up* to the commission of some desperate act, and is withal so inexcusable in itself, that law has never recognized it as an excuse for crime." The refusal of the court to grant the charge requested, "taken in connection with the unqualified instruction actually given," was held prejudicial error. "If the mental status required by law to constitute crime be one of deliberation and premeditation, and drunkenness or other cause excludes the existence of such mental state, then the crime is not excused by drunkenness or such other cause, but has not in fact been committed." *Pirtle* v. *State,* 9 Humph. 663. "The real question, therefore, is whether in such a case it is competent to show

that the defendant was, at the time of the shooting, intoxicated to such an extent that he could not form or have a purpose or intent to kill or wound." *Cline* v. *State,* 43 Ohio St. 332, 1 N. E. 22, 5 Am. Crim. Rep. 57. "As to whether his intoxication was in such a degree as to render him mentally incapable of forming or entertaining the design or intent to commit the felony charged was, as previously stated, solely a question of fact, to be determined from all of the evidence in the case." *Booher* v. *State,* 156 Ind. 435, 449, 54 L.R.A. 391, 60 N. E. 156. See also: *Brennan* v. *People,* 37 Colo. 256, 86 Pac. 79; *State* v. *Rumble,* 81 Kan. 16, 25 L.R.A.(N.S.) 376, 105 Pac. 1.

We are constrained to the view that the prayer granted in the present case was misleading and erroneous. The question before the jury was the condition of the defendant's mind at the time of the killing. Was he then capable of deliberation and premeditation, and, if not, how could he be capable of entertaining the specific, malicious intent which the statute says must be present in first-degree murder? And yet the jury were told that even though they should find the defendant at the time of the killing to have been so drunk as to be incapable of deliberation and premeditation, they should nevertheless convict him of murder in the first degree if they should further find that he had previously formed the requisite purpose to kill, and, at the time of the killing, had the previous purpose in mind. While it is unlikely that the jury would return a verdict of murder in the first degree unless satisfied that the defendant, at the time he committed the offense, was capable of entertaining the malicious intent, we cannot, in a case of this kind, speculate as to what considerations entered into their verdict. The statute plainly requires the existence of such an intent at the time of the commission of the offense, and, if it is absent, murder in the first degree has not been committed. In the case from which the language of this charge was taken (*State* v. *Robinson,* 20 W. Va. 741, 43 Am. Rep. 799), the court subsequently declared that "if a person kills another without provocation, and through reckless wickedness

of heart, but at the time of so doing, his condition, owing to intoxication, is such as to render him incapable of doing a wilful, deliberate, and premeditated act, he is guilty of murder in the second degree." The difference in the words just quoted and the charge given at the request of the government in the present case is apparent.

The court, at the request of the government, and over the objection and exception of the defendant, charged the jury "that while the weight to be given evidence of intoxication is a matter for you to determine, *yet such evidence should be received with caution* and carefully examined in connection with all the circumstances in the case." As was said in the *Hopt Case* (104 U. S. 634, 26 L. ed. 874, 4 Am. Crim. Rep. 365), "the question whether the accused is in such a condition of mind, by reason of drunkenness or otherwise, as to be capable of deliberate premeditation, necessarily becomes a material subject of consideration by the jury" in a case like the present. And this is especially true here because the fact of the killing was not denied. In the second trial of the *Hopt Case* the presiding judge observed that "an atrocious and dastardly murder has been committed by some person is apparent, but in your deliberations you should be careful not to be influenced by any feeling." This was held to constitute reversible error, notwithstanding that the jury had been instructed that they were "the sole judges of the credibility of the witnesses and of the weight of the evidence and of the facts." In the opinion of the Supreme Court it was said: "The prisoner had the right to the judgment of the jury upon the facts, uninfluenced by any direction from the court as to the weight of the evidence." *Hopt* v. *Utah,* 110 U. S. 574, 583, 28 L. ed. 262, 266, 4 Sup. Ct. Rep. 202, 4 Am. Crim. Rep. 417. Again, in *Winston* v. *United States,* 172 U. S. 303, 312, 43 L. ed. 456, 459, 19 Sup. Ct. Rep. 212, which involved the question of the right of a jury in a murder case in this jurisdiction to qualify their verdict by adding thereto "without capital punishment," the court, after reviewing prior adjudications, said: "While those decisions have no direct bearing upon the question now in judgment, they are important as illustrating the stead-

fastness with which the full and free exercise by the jury of powers newly conferred upon them by statute in this matter has been upheld and guarded by this court as against the possible effect of any restriction or omission in the rulings and instructions of the judge presiding at the trial." The vice of the instruction in the present case lies in the fact that, while the weight ultimately to be given evidence of intoxication was left to the determination of the jury, they were in effect told that this evidence should be weighed by a different standard and subjected to a different test than they applied to other evidence in the case. The defendant was entitled to have the judgmnt of the jury upon this evidence, as upon all other material evidence introduced by him, uninfluenced by any suggestion from the court as to its weight. Evidently, in submitting this charge, the government then thought an intimation should be conveyed to the jury that this particular evidence should be viewed with more or less suspicion. Any language which is calculated to invade the province of the jury, and which the government must know to be objectionable for that reason, should find no place in the charge of the court in any case, much less in a capital case.

One other assignment requires attention. Testimony was introduced, over the objection of the defendant, of the finding almost a year after the killing, in a cell occupied by the defendant and another prisoner, and to which others had access, of an improvised saw, and of the finding at about the same time in the cell of another prisoner of two pieces of cigar box. The theory of the government was that this testimony tended to show that the defendant was then capable of planning his escape, and hence was not insane. Inasmuch as any one of many prisoners may have secreted this saw, we need not pass upon the question whether the testimony would otherwise have been admissible, since a finding of the jury should be based upon evidence, and not conjecture.

The judgment must be reversed and the cause remanded for a new trial.                              *Reversed and remanded.*

A motion for rehearing was overruled on June 5, 1913.