James GREIDER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 778S143.

Supreme Court of Indiana.

Feb. 2, 1979.
Rehearing Denied April 3, 1979.

James A. Greco, Greco, Gouveia, Miller & Pera, Gary, for appellant.

Theodore L. Sendak, Atty. Gen., Elmer Lloyd Whitmer, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, James Greider, was charged on two counts of first-degree murder. He was tried by jury, convicted, and sentenced to life imprisonment. The defendant now appeals and urges this Court to find that the jury verdict was not supported by the evidence. Specifically, he alleges that there was no evidence to prove the defendant's sanity at the time of the shootings.

Testimony elicited from three physicians (including two psychiatrists) was to the effect that the defendant was not legally sane at the time of the offense because he was suffering from a toxic psychosis due to self-administered substances, drugs. Other witnesses testified that the defendant acted intoxicated, high on something, or not normal.

However, the evidence was conflicting. The defendant himself admittedly remembered the episode of the shooting enough to recognize that he had been armed with a loaded pistol when he went to the victims' apartment. He remembered procuring a sawed-off shotgun (which one victim, Richard, was to use in a drug deal) and carrying it to the apartment. He remembered that there were two loud explosions and that Richard was on the floor; he remembered another loud explosion and that the other victim, Paula, was on the floor. He testified that he "went over to see if Richard was still alive. I felt for a pulse. I didn't get any kind of vital sign." He had not checked to see if Paula was alive because she had been shot between the eyes. He wrapped the shotgun in a field jacket and took it and the pistol to his home where he placed them under the mattress of the bed. Then he slashed his own arm with a knife; he went next door to his neighbor's house and asked the neighbor to take him to the emergency room. The neighbor testified that the defendant's speech was not unusual and that the defendant insisted upon reading the hospital release forms before he would sign them. The defendant himself called police officials two days after the shootings and reported that he thought he had shot two people.

It is true that when a defendant enters a plea of not guilty by reason of insanity, the burden of proving sanity beyond a reasonable doubt is on the state. *Coonan v. State*, (1978) Ind., 382 N.E.2d 157. But, the question of one's sanity is an issue to be resolved by the trier of fact. *Montague v. State*, (1977) Ind., 360 N.E.2d 181; *Stacker v. State*, (1976) 264 Ind. 692, 348 N.E.2d 648. All the facts and circumstances surrounding the events, as well as lay testimony regarding appellant's appearance and conduct, may be considered, and the jury may accept or reject the statements of any or all witnesses, including psychiatrists. *Morris v. State*, (1979) Ind., 384 N.E.2d 1022; *Stamper v. State*, (1973) 260 Ind.

211, 294 N.E.2d 609; *Moore v. State,* (1973) 260 Ind. 154, 293 N.E.2d 28.

 Here, the facts and circumstances surrounding the shootings, as related by the defendant himself, provide sufficient evidence to sustain the jury's conclusion that the defendant was sane at the time he fired the gun. Despite his allegations that he does not actually remember aiming at the two victims, the victims were both shot directly in the head. The defendant admitted checking to see if Richard were alive; he admitted hiding the guns. Where there is substantial evidence of probative value to support the conclusion of the trier of fact, that conclusion will not be overturned. *Coonan v. State, supra.*

Although the defendant has not separately isolated his raised defense of voluntary intoxication, his arguments regarding the absence of proof of premeditation or *mens rea* necessitate some discussion. The jury received two instructions upon voluntary intoxication. Those instructions, unobjected to by the defendant, correctly informed the jurors that voluntary intoxication is not normally a defense in a criminal proceeding. In order for intoxication to relieve a defendant from responsibility, the crime charged must have involved specific intent, and the defendant must have been so intoxicated as to be incapable of entertaining the required specific intent.

"[T]he conventional view is that so-called voluntary intoxication is simply not allowed to negate the elements of voluntariness or moral awareness, because it is said that when one voluntarily becomes intoxicated, guilt is attached to the intoxication itself, and is then transferred to the criminal act, supplying the required culpability." C. Thompson, Commentary, West's Ann.Ind.Code § 35–41–3–6 (1978), *citing* H. Silving, Essays on Mental Incapacity and Criminal Conduct 24 (1967). *See also, Snipes v. State,* (1974) 261 Ind. 581, 307 N.E.2d 470; *Emler v. State* (1972) 259 Ind. 241, 286 N.E.2d 408; Ind.Code § 35–41–3–5(b) (Burns Supp.1978). Whether the requisite intent existed is a question of fact for the jury. *Preston v. State,* (1972) 259 Ind. 353, 287 N.E.2d 347.

So long as the offender is capable of conceiving a design, he will be presumed, in the absence of contrary proof, to have intended the natural consequences of his own acts. *Smurr v. State,* (1883) 88 Ind. 504. The defendant purposefully sawed off a shotgun and went to the victims' apartment armed; three separate shots were fired; and the defendant hid the weapons after the criminal conduct was completed. There *was* evidence that the defendant had been ingesting large quantities of drugs, but there was also evidence that his actions (feeling for the victim's pulse, seeking assistance for his own cut, insisting upon reading the hospital form) were not the actions of a man so intoxicated as to render him incapable of entertaining a specific intent. *See, e. g., Stout v. State,* (1974) 262 Ind. 538, 319 N.E.2d 123; *Taylor v. State,* (1973) 260 Ind. 264, 295 N.E.2d 600; *Storie v. State,* (1970) 254 Ind. 301, 258 N.E.2d 849. Since there was evidence of premeditation and *mens rea* sufficient to support the jury verdict, that verdict must not be disturbed.

For all of the foregoing reasons, there was no trial court error, and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.