James William **PETTIT**, Appellant
(Defendant Below),

v.

**STATE** of Indiana, Appellee
(Plaintiff Below).

No. 978S196.

Supreme Court of Indiana.

Nov. 13, 1979.

Keith A. Dilworth, Public Defender, Richmond, for appellant.

Theo. L. Sendak, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a trial by jury of Unlawful Dealing in a Controlled Schedule I Substance (heroin) in violation of Ind.Code 35–24.1–4.1–2 (Burns

1975), for which he was sentenced to twenty years imprisonment and fined two thousand dollars. On appeal he presents the following issues:

(1) Whether the trial court erred in allowing witnesses for the State to testify concerning previous narcotics sales by the defendant.

(2) Whether the trial court erred in allowing segments of a tape recording to be played to the jury.

(3) Whether the trial court erred in refusing defendant's tendered instruction on intoxication, as a defense to the crime charged.

(4) Whether the trial court erred in denying defendant's Motion for a directed verdict at the close of the State's case in chief.

(5) Whether the verdict was supported by sufficient evidence.

(6) Whether the defendant was convicted by an impartial jury.

The evidence when viewed most favorably to the State discloses that, on the evening of February 11, 1977, three members of the Richmond Police Department met with two informants, Michael and Karen Boatman, who were husband and wife. The Boatmans were strip-searched and a sound transmitting device was placed and concealed within the clothing of Karen Boatman. The Boatmans were transported to the 200 block of South 12th Street in Richmond, at which point they exited the vehicle and walked to defendant's residence at 231 South 12th Street. The police officers remained in the vehicle and recorded the conversations received from the transmitting device. The defendant allowed the Boatmans to enter his residence and sold them a "quarter-bag" of heroin for forty dollars.

\*    \*    \*    \*    \*    \*

### ISSUE I

■ Defendant's first contention is that the trial court erred in allowing the Boatmans to testify that they were both narcotic addicts with substantial habits, that they had regularly purchased heroin from the defendant and that he was their only source of the drug.

Generally, evidence of other criminal activity is inadmissible on the question of guilt. *Cobbs v. State*, (1975) 264 Ind. 60, 338 N.E.2d 632. "However, such evidence may be admitted to show intent, motive, purpose, identification, or common scheme or plan." *Cobbs, id.* at 62, 338 N.E.2d at 633.

The defendant argues that none of these exceptions are applicable to the case at hand, but we hold that the evidence of the defendant's other drug transactions are admissible because it tended to prove his common scheme and plan of heroin distribution. See, *Manuel v. State*, (1977) Ind., 370 N.E.2d 904; *Miller v. State*, (1975) Ind.App., 338 N.E.2d 733. *See also, United States v. Bloom*, (5th Cir. 1976) 538 F.2d 704; *United States v. Conley*, (8th Cir. 1975) 523 F.2d 650. The State offered testimony of the pre-existing relationship between the defendant and the Boatmans in order to lend credibility to their testimony and to show that the defendant had the intent to engage in an illegal act and a common plan or scheme to distribute heroin. We see no error in the admission of such evidence under the circumstances of this case.

### ISSUE II

■ State's Exhibit 5 is a tape recording made on February 11, 1977. It consists of three segments. The first segment is a telephone conversation between paid informant, Michael Boatman, and the defendant. The second segment is a recording of the actual drug transaction—a sale of heroin by the defendant to the paid informants, Michael and Karen Boatman. The sale occurred at the residence of the defendant and was recorded by means of the sound transmission device previously mentioned. The third segment is a recording of a conversation between the Boatmans, as they left the defendant's residence. Preceding and following each segment of the tape is commentary by the police detective in charge of the drug investigation; however, these comments were deleted from that

which the jury was allowed to hear. Prior to trial, a hearing was held upon the defendant's motion to suppress this tape; and, after listening to the tape, the trial court made the following comments and ruling:

"THE COURT: * * * In fact the only part of that tape that is very audible is the telephone call that was made before they went. Well, aren't these people that made this buy—aren't they going to be witnesses?

MR. SURFACE: They're witnesses * * *.

"THE COURT: Well, why can't they testify straight out what they did and said?

"MR. SURFACE: They will, Judge, but I think this is good corroborating evidence.

"THE COURT: That tape's so * * you've got things typed up here [on the transcription] that this said that frankly I couldn't tell whether it said those things or not. The tape up there in the apartment or house is not very clear. Can't they testify as to what happened at that location of their own personal knowledge and recollections?

"MR. SURFACE: They certainly can, and they certainly will, Judge. I was merely offering this * * *.

"THE COURT: If they would go against this, I would think maybe it could be played back to them for impeachment purposes. Or if the defendant takes the stand he might be impeached. Right off hand * * * the only part that's very clear is the telephone conversation, and all of the narrative * * *.

\* \* \* \* \* \*

"THE COURT: The only part that I really think is sufficiently clear to play to the jury is the part beginning with the telephone ringing and ending with that conversation. * * *.

\* \* \* \* \* \*

"THE COURT: Right now the Court will rule that this tape is not sufficiently clear to be admissible into the Lamar and Larimore standards except with respect to the very first part where the witness placed a telephone call to the defendant."

The case proceeded to trial, and the paid informants and the three narcotics officers (who had listened to and recorded the conversation in a nearby police car) related to the jury the statements made during the drug buy. After these five had testified, the trial court reversed its earlier ruling and, over timely objection, allowed all three segments of the tape to be played to the jury. The record contains no explanation as to why the court reversed its pre-trial ruling. Thereafter, the State rested; the defense called no witnesses.

The defendant contends that the audio quality of the tape does not meet the standard set out in *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795, 800, wherein this Court stated that, to be admissible, a tape recording must be of "such clarity as to be intelligible and enlightening to the jury." The reason for this rule was stated as follows:

"We are not so much concerned by the absence of enlightenment, however, as we are by the obvious prospects for confusion that such exposure might engender. * * The tape recording having been introduced into evidence by the prosecution, it would be altogether logical for the jury to assume that it contained information prejudicial to the defense. Being unable to understand its content when reproduced through the audio device, the jury could only speculate thereon. Although we cannot say with certainty that such speculation lead to Defendant's conviction, we think it placed him in a position of grave peril to which he should not have been subjected." *Id.*, 258 Ind. at 511, 282 N.E.2d at 799.

*Lamar* stands for the additional proposition that the court of appellate review may listen to the tape and make an independent determination of its clarity, and "justice demands that we substitute our judgment, if different from that of the trial judge." *Id.*, 258 Ind. at 512, 282 N.E.2d at 800.

After having listened to the tape recording, we conclude that its audio quality falls

far short of the standard set out in the *Lamar* case. Far from being of such clarity so as to be intelligible and enlightening to the jury, segments 2 and 3 of the tape recording are of a very poor audio quality due, at least in part, to large amounts of static and background noise. It was error to play a recording of such poor quality to the jury.

The State responds, however, that any such error was harmless:

"The record shows that previous witnesses testified as to the telephone call, the drug transaction, and the return to the police car. The transcript of the tape shows that it is corroborative of the testimony of Karen and Mike Boatman, and Officer Murray, Irvine and Williams, all of whom testified prior to the playing of the tape. 'It is the law in Indiana that improperly admitted evidence that is only corroborative of competent and unrefuted evidence is not reversible error.' *Lamar v. State*, (1977) Ind., 366 N.E.2d 652, 654; *Walker v. State*, (1976) Ind., 349 N.E.2d 161. Since the tape was merely corroborative of prior testimony its admission is harmless."

We think there is merit to the State's argument. The evidence of the defendant's guilt was direct and overwhelming. Furthermore, five prosecution witnesses described in detail the secretly recorded conversation which accompanied the drug sale. Their descriptions were substantially the same. Thus, the danger of jury speculation—the harm sought to be curtailed by our holding in the *Lamar* case, was of less significance in the case at bar. Accordingly, we do not believe that the defendant in the instant case was put in a position of grave peril as characterized the situation in *Lamar*, and we are satisfied that the error was harmless. However, in so holding, we emphasize that the courts should not tolerate sound recordings of such inferior quality. This does not mean that *every* recorded word must be intelligible. This cannot be expected, anymore than one would expect the jury to understand every word uttered from the witness stand; but of course, if unintelligible parts can be eliminated with-

out altering the meaning of the whole, we see no justification for the jury to be exposed to the unintelligible portion. *Lamar v. State, id.,* at 506, 510, 282 N.E.2d 795. We only require that, taken as a whole, the tape be of such clarity that it does not lead to jury speculation as to its content.

## ISSUE III

■ Defendant also assigns, as error, the trial court's refusal of his tendered instruction on intoxication, which read as follows:

"Voluntary intoxication by the use of alcohol is no defense or excuse to a crime. It will be presumed, if the case is otherwise made out beyond a reasonable doubt, that the defendant intended the natural consequences of his own act. Mere intoxication does not excuse an offense, but it may produce a state of mind which incapacitates a party from forming or entertaining a specific intent.

"The jury may consider the intoxication of the defendant, if any be shown by the evidence, in determining whether said defendant did commit any crime charged in the information against him with the necessary intent as herein stated."

Defendant asserts that evidence of intoxication was introduced at trial and that no instruction on such was given.

The sole evidence of intoxication presented at trial consisted of these statements by Michael Boatman, made on cross-examination:

"Q. Was [defendant] under the influence of anything then?

"A. As far as I * * * I believe so.

"Q. Pretty far under?

"A. Not as much as I've seen him before.

"Q. But he was pretty far under that day?

"A. Just his average day."

There was no further inquiry or testimony as to the meaning of "Just his average day." No evidence was presented tending to show that defendant was intoxicated to the point that he lacked the ability to ap-

preciate the ethical quality of his actions or to control those actions. Thus, no instruction on intoxication was required. *Wolfe v. State*, (1978) Ind., 383 N.E.2d 317, 319; *Layne v. State*, (1975) 164 Ind.App. 486, 329 N.E.2d 612, 619.

## ISSUE IV

■ At the close of the State's case, Defendant moved for a directed verdict, alleging that there was no evidence that he had sold anything to Karen Boatman, as alleged in the State's information.

The defendant is entitled to a directed verdict of acquittal only where there is a total lack of evidence on some essential issue, or where the evidence is susceptible to but one inference, and such inference is in favor of the defendant. *Carroll v. State*, (1975) 263 Ind. 696, 338 N.E.2d 264.

The record reflects that Michael and Karen Boatman, husband and wife, went to Defendant's residence with the avowed purpose of purchasing heroin from the Defendant. Karen discussed the terms of the deal and, when Defendant transferred a packet of heroin to Michael, Karen instructed her husband to place the packet in his wallet. The evidence was such that the jury could logically infer that the sale was to Karen as well as to Michael.

## ISSUE V

■ Prior to making the heroin purchase, the Boatmans were strip-searched by the police officers to insure that the Boatmans were not carrying drugs on their persons prior to the drug sale. Defendant contends that the evidence was insufficient to support his conviction, in that there was no evidence that the police conducted a body cavity search of the Boatmans, or that the police searched the areas the Boatmans were in when the drug sale occurred.

As a court of review, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Robinson v. State*, (1977) 266 Ind. 604, 365 N.E.2d 1218. Rather, we will look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom, to determine whether a reasonable juror could have found the existence of each of the elements of the crime charged beyond a reasonable doubt. *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831. Defendant raises the possibility that the Boatmans obtained the heroin from another source; however, to withstand a sufficiency challenge, it is not required that guilt be proved to a mathematical certainty. Proof beyond a reasonable doubt does not mean proof to the exclusion of every conceivable hypothesis to the contrary. *Mendez v. State*, (1977) Ind., 370 N.E.2d 323, 326. Here, there was abundant evidence to warrant a reasonable man to conclude, beyond a reasonable doubt, that the defendant sold the packet of heroin to the Boatmans.

## ISSUE VI

■ Defendant contends that he is entitled to a new trial because, according to him, one of the jurors knew him personally.

The issue was raised by an unverified motion to correct errors, accompanied by a copy of two letters which Defendant had written to his counsel informing him of his prior relationship with one of the jurors.

Trial Rule 59(D), incorporated by Criminal rule 16, requires that "When a motion to correct errors is based upon evidence outside the record, the cause must be sustained by affidavits showing the truth thereof served with the motion." In the case at bar, Defendant filed no such affidavit. However, he contends that since the information as to the juror was related to the trial court by counsel at his sentencing hearing, it was part of the record of proceedings, thus negating the need for an affidavit. We disagree. While there was some discussion between defense counsel and the court regarding the defendant's claim, there was no evidence introduced on the matter. The record does not reflect that Defendant ever testified under oath as to his allegations. Thus his contention is not properly before this Court. Furthermore, Defendant has failed to show that his newly discovered evidence is of such a na-

ture that it would reasonably and probably have resulted in a different verdict; nor do the letters indicate why the defendant failed to recognize the juror until after the guilty verdict had been rendered.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.