William B. CARTER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–178A5.

Court of Appeals of Indiana,
Second District.

Aug. 11, 1980.

Ernie Burke, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Elmer Lloyd Whitmer, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Defendant-appellant William B. Carter was charged in a two-count indictment with the offenses of sodomy[1] and rape[2] and, after a bench trial, was convicted of sodomy and assault and battery with intent to gratify sexual desires.[3] In this appeal, Carter raises the following issues within the context of a general sufficiency of the evidence argument:[4]

1. IC 35–1–89–1 (Burns Code Ed. 1975) has been repealed by Acts 1976, P.L. 148 § 24, effective October 1, 1977.

2. IC 35–13–4–3 (Burns Code Ed. 1975) has been repealed by Acts 1976, P.L. 148 § 24, effective October 1, 1977.

3. IC 35–1–54–4 (Burns Code Ed. 1975) has been repealed by Acts 1976, P.L. 148 § 24, effective October 1, 1977.

4. We observe that Appellant's Brief does not conform to the requirements of the Indiana Rules of Procedure, Appellate Rule 8.3(A)(3), (4), (6), and (7). We would be justified in dismissing or affirming the trial court's decision, as the State urges, for that reason alone. In addition, the brief attempts to raise issues that were not preserved either at trial or in the Motion to Correct Errors and, therefore, are waived on appeal. We, nevertheless, at the expense of substantial judicial time, prefer to address the merits of the issues.

(1) the competency of the seven (7) year old female victim to testify;

(2) whether the trial court erred in permitting the victim's parents to remain in the courtroom during her testimony;

(3) the sufficiency of the uncorroborated testimony of the victim;

(4) the sufficiency of Carter's evidence that he was intoxicated to an extent he did not have any criminal intent; and

(5) the sufficiency of the evidence, generally, to support both convictions.

## I

■ Carter first contends the trial court erroneously determined the prosecutrix, W.G., was competent to testify. We observe, however, that Carter did not make an objection at trial to the competency of the seven (7) year old victim to testify. The failure to make a timely objection to testimony at trial operates as a waiver on appeal. *Gutierrez v. State,* (1979) Ind., 395 N.E.2d 218.

■ Moreover, assuming the issue was properly preserved for our review, we find no error. The determination of the competency of a child under the age of ten (10) years lies within the sound discretion of the trial court. When the trial court has the opportunity to observe the maturity, intelligence, and demeanor of the child, we review only for an abuse of discretion. *Buttram v. State,* (1978) Ind., 382 N.E.2d 166. The determination of competency rests upon the ability of the child to know the difference between truth and falsehood and to understand that he or she, by testifying, is under a compulsion to tell the truth. *Johnson v. State,* (1977) 265 Ind. 689, 359 N.E.2d 525.

■ A review of the record in this cause shows the trial judge thoroughly questioned the prosecutrix. This examination revealed the witness understood the difference between truth and falsehood, as well as the obligation of testifying under oath. We do not find an abuse of discretion in permitting the seven (7) year old victim to testify.

## II

The State moved for, and was granted, a separation of witnesses prior to the introduction of any evidence. The first witness to testify was the mother of the prosecutrix. Immediately before the prosecutrix was called as the second witness, the State asked the court to close the courtroom during her testimony. Carter's counsel stated he had no objection to that procedure, nor does he raise one on appeal. When, however, the State asked that the prosecutrix's parents be allowed to remain, Carter objected, "because I think they might be trying to prompt the child" and "might exert some influence on her testimony." The trial court overruled Carter's objections and the parents remained in the courtroom during the prosecutrix's testimony.

On appeal, Carter argues it was improper for the prosecutrix to testify in her parents' presence and the trial court further erred in permitting the parents to remain in the courtroom in violation of the separation of witnesses order.

■ As to the first allegation, Carter does not point to any improper conduct by the parents during their daughter's testimony; nor does he cite any authority or any persuasive argument in support of his position. We hold, therefore, the trial court did not err in permitting the parents to remain in the courtroom during the prosecutrix's testimony. *See Dixon v. State,* (1976) 264 Ind. 651, 348 N.E.2d 401.

■ Carter's reliance on a violation of the separation of witnesses order must also fall. In the first instance, such objection was not made at trial and is, therefore, waived. Furthermore, the principal purpose of a separation of witnesses order is to prevent witnesses from hearing the testimony and questioning of other witnesses. In this case the prosecutrix was not present during her mother's testimony; the mother testified prior to her daughter, the prosecutrix, and was not recalled. The prosecutrix's father did not testify. There was,

therefore, at most a technical violation of the trial court's separation of witnesses order which was not prejudicial to Carter.

### III

■ Contrary to Carter's contention, "a conviction of assault and battery with intent to gratify sexual desires may be sustained on the uncorroborated testimony of the prosecuting witness, even when such witness is a minor." *Smith v. State,* (1978) Ind.App., 372 N.E.2d 511, 516. *See Scales v. State,* (1975) 165 Ind.App. 588, 333 N.E.2d 814. Moreover, Carter erroneously concludes the victim's testimony was uncorroborated. The prosecutrix's mother testified to a telephone conversation between herself and Carter in which he admitted the act of cunnilingus on the victim. This evidence is corroborative of the victim's testimony. Furthermore, this portion of the mother's testimony was corroborated by the grand jury testimony of Carter's wife, admitted as substantive evidence in the trial below pursuant to *Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482.

### IV

Carter next contends he was unable, due to his drunkenness, to entertain the requisite criminal intent. The threshold question, however, is whether voluntary intoxication is a defense to the offenses of which Carter was convicted:

"[V]oluntary intoxication is not normally a defense in a criminal proceeding. *In order for intoxication to relieve a defendant from responsibility, the crime charged must have involved specific intent,* and the defendant must have been so intoxicated as to be incapable of entertaining the required specific intent."

*Greider v. State,* (1979) Ind., 385 N.E.2d 424, 426 (emphasis added). *See Williams v. State,* (1979) Ind., 393 N.E.2d 149; *Patterson v. State,* (1978) 267 Ind. 515, 371 N.E.2d 1309; *James v. State,* (1976) 265 Ind. 384, 354 N.E.2d 236; *Stout v. State,* (1974) 262 Ind. 538, 319 N.E.2d 123; *Anderson v. State,* (1978) Ind.App., 380 N.E.2d 606.

■ Thus, case law has developed an indirect defense[5] in regard to an intoxicated offender that is inextricably intertwined with the concept of *mens rea* ; the applicability of said defense depending upon whether the charged offense requires a "specific intent" in addition to a "general intent." Surprisingly, however, no Indiana decisions have defined the term "specific intent,"[6] and our courts have often reached

---

**5.** The defense is referred to as indirect because of the way it operates. That is, the defense properly applied, unlike entrapment or duress, does not necessarily operate as an acquittal; but, instead, eliminates a particular mental element of the offense, *i. e.,* specific intent.

**6.** While Indiana decisions have not defined the term "specific intent," there are two cases that have, in differing contexts, analyzed "specific intent" and require further discussion.

In *Hooker v. State,* (1979) Ind.App., 387 N.E.2d 1354, an appeal from a voluntary manslaughter conviction under IC 35–13–4–2 (Burns Code Ed. 1975), (since repealed), the appellant alleged, *inter alia,* the trial court erred in giving an instruction indicating "that specific intent is not an element of the offense of voluntary manslaughter." In the process of holding "specific intent is not an element of voluntary manslaughter" and, therefore, the instruction was properly given, the court, in a footnote, observed:

"Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. General criminal intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of a subjective desire to have accomplished such result. 22 C.J.S. *Criminal Law* §§ 32 and 35 (1961)."

Id. at 1358, n. 1.

While *Hooker* does not define "specific intent" or "general intent," the quote does point out the objective/subjective dichotomy of *mens rea.* As noted, *infra,* many criminal offenses punish not just the act(s) but the result(s) of the act(s). Stated differently, the harm sought to be proscribed by a criminal statute is often the prohibited result(s) of the voluntary act(s). To illustrate, the harm sought to be proscribed by, *e. g.,* the first degree murder and involuntary manslaughter statutes, is not the shooting of a gun (*i. e.,* the voluntary act) but, instead, the killing of a human being (*i. e.,* the prohibited result). One is punished for first degree murder, a "specific intent" offense, only when the actor's shooting the gun (*i. e.,* the voluntary act) was done with the subjective desire to kill a human being (*i. e.,* the prohibited result)

(perhaps implied in the statutory word "premeditation"). On the other hand, one is punished for voluntary manslaughter, a "general intent" crime, whenever the killing of a human being (i. e., the prohibited result) may reasonably be expected to follow from the actor's shooting of the gun (i. e., the voluntary act), regardless of whether or not he subjectively desired to kill the human being when he shot the gun.

Somewhat related to the objective/subjective dichotomy of *mens rea* is the evidentiary rule of "presumed intent," whereby a "general intent" may be presumed from the commission of the voluntary act(s) (e. g., shooting a gun) while a "specific intent" is an element of the offense and must be proved by the State just as any other essential element of the offense and may not be presumed solely from the commission of the voluntary act(s). *See Markiton v. State*, (1957) 236 Ind. 232, 236, 139 N.E.2d 440, 442, quoting from 22 C.J.S. *Criminal Law* § 32, at 91–92:

> " 'Where a crime consists of an act combined with a specific intent, . . . the requisite specific intent must be shown as a matter of fact, either by direct or circumstantial evidence . . . . The general rule, stated *infra* § 34, that a criminal intention will be presumed from the commission of the unlawful act does not apply; and proof of the commission of the act does not warrant the presumption that the accused had the requisite specific intent.' "

*See Morissette v. United States*, (1952) 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; Perkins, *A Rationale of Mens Rea*, 52 Harv.L.Rev. 905, 925–26 (1939).

It was in the context of this "presumed intent" rule that "specific intent" was addressed by this court in *Eby v. State*, (1972) 154 Ind. App. 509, 290 N.E.2d 89. In *Eby*, an appeal from a burglary conviction wherein the information charged defendant with breaking and entering " 'with intent to do violence and physical abuse upon' [the prosecutrix]," the sole issue before this court was "whether the evidence is sufficient to prove . . . the specific intent charged." In an eloquent opinion, the court concludes "[t]here was sufficient evidence to sustain the finding that defendant broke and entered 'with intent to do violence and physical abuse upon' prosecutrix." *Id.* at 521, 290 N.E.2d at 97.

In reaching the conclusion the evidence was sufficient to prove the specific intent charged, the court assumed "for the purpose of discussing the law applicable to proof of the specific intent here charged" that: (1) "the only evidence thereof . . . is the breaking and entering and the act of violence defendant committed on prosecutrix after he entered her apartment," *id.* at 512, 290 N.E.2d at 92; and (2) the "commission of the battery *after* entry, without more, is *not* sufficient to prove beyond a reasonable doubt that his *purpose* for breaking in (i. e., the *reason* he broke in) was 'to do violence and physical abuse upon' prosecutrix," *id.*, and framed the question thusly:

> "whether the commission of a battery after break-in, without more, is sufficient circumstantial evidence to warrant the inference that the intruder possessed a specific intent to do violence at the time he entered. In short, we question whether 'intent' is 'purpose.' "

*Id.* at 513, 290 N.E.2d at 92.

The court initially cites 1 Burdick, Law of Crime § 120 at 139 (1946), *id.* at 513, 290 N.E.2d at 92, 93, wherein Prof. Burdick, *inter alia*, correctly defines the "classic" "specific intent" crime:

> " 'In addition to the mental element known as 'the intent' which must exist in all crimes, some crimes require a further mental element known as the specific intent. This is intent in the popular sense, a definite and actual purpose to accomplish some particular thing.' "

*Id.* at 513, 290 N.E.2d at 92. The court proceeds, however, to dismiss this definition, stating:

> "Upon the assumptions we have made, if we were to adopt Prof. Burdick's definition of specific intent ('a definite and actual purpose to accomplish some particular thing'), we would be forced to say that the evidence was not sufficient to prove the specific intent charged. But we are satisfied that the meaning of 'intent' (as a legal term in what we call 'specific intent') does not always coincide with the popular concept of 'purpose.' "

*Id.* at 514, 290 N.E.2d at 93.

The court went on to say that, regardless of the purpose or reason for breaking and entering, one also possesses "conditional intents" to do whatever is necessary to accomplish the purpose or reason (i. e., here, irrespective of the reason or purpose for breaking and entering, defendant had a "conditional intent" to do whatever was necessary to accomplish the reason or purpose which included the intent to commit an act of violence upon whomever he confronts); that the "conditional intents" are specific; and that the commission of the act (here, the battery) is sufficient to justify the inference he entered with the specific intent to do what he did, i. e., commit a battery:

> "While the purpose for which an intruder has broken into the habitation of another is not presumptively established *merely* upon proof of breaking and entering, his unexplained entry by such means in a home in which he is a stranger is logically sufficient to sustain a reasonable inference that whatever may have been his primary intent or purpose he must have anticipated that confrontation with the home's inhabitants was not unlikely and that his presence would not

divergent results concerning which crimes require a specific intent.[7]

It is often stated that a crime requires two components; one objective, the performance of the prohibited act, *i. e.*, the *actus reus*, and the other subjective, the mental component of an offense, *i. e.*, the *mens rea. See generally* R. Perkins, Criminal Law 743–49 (1969); W. Lafave & A. Scott, Criminal Law § 27, at 191–93 (1972).

*See also Perkins, A Rationale of Mens Rea,* 52 Harv.L.Rev. 905 (1939). *Cf. Markiton v. State,* (1957) 236 Ind. 232, 139 N.E.2d 440 ("A crime has two components—an evil intent coupled with an overt act.") It is, however, somewhat misleading to think in terms of a crime requiring two components, an evil act (*actus reus*) and an evil intent (*mens rea*); for such concepts developed in an era quite dissimilar to modern society.

be welcome. If a confrontation then occurs and he does commit an act of violence upon the person he thus confronts, the commission of the act is sufficient to justify the inference that he entered with the specific intent to do what he did, provided the occasion arose. That he also had, or may have had, a different *purpose* or *reason* for breaking and entering would subtract nothing from the reasonability of inferring the concurrent intent to do violence if confronted. Nor would insufficiency of the evidence to imply precisely what defendant's purpose was subtract anything from the reasonableness of inferring intent on entry to do violence, if violence is committed after entry and if there is no reasonable doubt that the purpose for breaking in was not innocent.

    \*      \*      \*      \*      \*      \*

". . . We do say that it is not necessary for that judge or jury also to be convinced that the commission of violence was the purpose of the breakin. They may be convinced that he had another purpose or they may be in reasonable doubt as to what his purpose was.

"[T]he intent to do violence *if necessary*, existed at entry. Such conditional intent is specific."

*Id.* at 518, 519, 290 N.E.2d at 95, 96 (original emphasis).

We respectfully submit that the court erroneously dismissed Prof. Burdick's definition of specific intent and erred in equating "conditional intent" with "specific intent."

The Court was correct in noting that *upon the assumptions it made* it would have to hold the evidence insufficient to prove the specific intent charged, were it to adopt Prof. Burdick's definition of specific intent. Its first assumption, however, that the only evidence of specific intent was the breaking, entering, and battery, forces that answer because specific intent cannot be inferred from the commission of the acts. However, the evidence revealed the following circumstances, external to the breaking, entering, and battery, which were more than sufficient to support the specific intent charged: the victim was in the bathroom of her apartment with the bedroom and bathroom lights lit and the bathroom door open, having previously turned off the living room, dining room, and kitchen lights, when she heard the

patio sliding door open; her ability to hear the door slide open makes it reasonable for the trier of fact to infer defendant was able to hear her movements in the bathroom which, coupled with the extinguishment of lights, permits a reasonable fact-finder to find defendant knew the apartment was occupied; there was no evidence indicating defendant stole anything from the apartment or prepared to do such; he made no effort to avoid detection or flee but, instead, retrieved a pillow from the living room and waited in the hallway for the victim to emerge from the bathroom.

The foregoing evidence was more than sufficient to support the inference defendant broke and entered for the purpose or reason of "violence or abuse" or battery upon the prosecutrix. Thus, the first assumption being unnecessary, the court did not have to disagree with Prof. Burdick's definition of "specific intent" and, instead, delve into technical distinctions between purpose and intent.

Similarly, it was unnecessary for the court to indicate "conditional intent" is synonymous with "specific intent." We do not dispute the premise that one possesses several "conditional intents" with respect to the commission of any crime. Nor do we mean to imply that one "specific intent" necessarily excludes the existence of other "specific intents." *See, e. g.,* Judge Sullivan's dissent in *Castaneda v. State,* (1978) Ind.App., 372 N.E.2d 1191, 1193–94. Such "specific intents," however, are not "conditional intents," and may not be presumed solely from the voluntary commission of the act(s).

7.  *Cf. Johnson v. State,* (1980) Ind., 399 N.E.2d 360, 361, quoting from *Roberts v. State,* (1977) 266 Ind. 72, 77, 360 N.E.2d 825, 828 (" '[C]onviction for the crime of robbery . . . requires proof only of general criminal intent and knowledge.' ") *with Snipes v. State,* (1974) 261 Ind. 581, 307 N.E.2d 470 (reverses Court of Appeals decision which held "robbery is not a 'specific intent' crime"); and *Ashbaugh v. State,* (1980) Ind., 400 N.E.2d 767, 774 ("[S]pecific intent is not an element of second degree murder") *with Dobbs v. State,* (1957) 237 Ind. 119, 143 N.E.2d 99 (holding voluntary intoxication may negate the malicious intent to kill required for second degree murder).

Modern penal offenses that have evolved are not so easily categorized into the two aforementioned components. Many criminal offenses punish not just the act(s) but the results or nature of act(s), as well as acts committed with knowledge or awareness of certain attendant circumstances.

Similarly, characterization of *mens rea* as an "evil intent" is also misleading. As noted by Sayre:

"[I]t seems clear that *mens rea*, the mental factor necessary to prove criminality, has no fixed continuing meaning. The conception of *mens rea* has varied with the changing underlying conceptions and objectives of criminal justice. At the beginning when the object of criminal administration was to restrict and supplant the blood feud, the mental factor was of importance insofar as it determined the provocative nature of the offense; a malicious burning of another's dwelling house being far more provocative than an accidental one, judges must distinguish between malicious and accidental burnings. Under the dominating influence of the canon law and the penitential books the underlying objective of criminal justice gradually came to be the punishment of evil-doing; as a result the mental factors necessary for criminality were based upon a mind bent on evil-doing in the sense of moral wrong. Our modern objective tends more and more in the direction, not of awarding adequate punishment for moral wrongdoing, but of protecting social and public interests. To the extent that this objective prevails, the mental element requisite for criminality, if not altogether dispensed with, is coming to mean, not so much a mind bent on evil-doing as an intent to do that which unduly endangers social or public interests."

F. B. Sayre, *Mens Rea*, 45 Harv.L.Rev. 974, 1016–17 (1932).

8. F. B. Sayre, *Mens Rea*, 45 Harv.L.Rev., 974, 993 (1932).

9. *Id.* 982–83.

10. *See* J. Hall, General Principles of Criminal Law 529–30 (2d ed. 1960).

The concept of *mens rea* was not universally accepted until the later half of the Seventeenth Century;[8] the idea of subjective blameworthiness, apparently, due to the influence of the canon law making inroads into the early English Law around the end of the Twelfth Century.[9] The idea that a criminal offense requires some sort of moral blameworthiness or *mens rea* was, therefore, firmly entrenched in the common law by the mid-Nineteenth Century, when the courts first allowed evidence of the accused's voluntary intoxication to be admitted as an indirect defense.

At early common law, voluntary intoxication was no defense to a crime.[10] As noted by Professor Hall, the defense first developed in homicide cases; the defense being suggested first in an 1819 English report.[11] The defense was slow to take root and the language which ultimately became accepted was stated by Stephen in *Regina v. Doherty*, (N.P.1887), 16 Cox C.C. 306, 308 as:

"[A]lthough, you cannot take drunkenness as any excuse for a crime, yet when the crime is such that the intention of the party committing it is one of its constituent elements, you may look at the fact that a man was in drink in considering whether he formed the intention necessary to constitute the crime."[12]

Indiana, as with most jurisdictions grounded in the common law, followed the early development of the defense pertaining to voluntary intoxication, allowing such defense only in homicide cases. In *O'Herrin v. State*, (1860) 14 Ind. 420, an appeal from a larceny conviction, the appellant alleged, "that intoxication would, in all otherwise criminal acts, rebut the presumption of criminal intent, and should work the acquittal of the defendant." *Id.* The court disagreed and, in affirming the conviction, stated:

11. *Id.* 531–32.

12. *Id.* 532. According to Professor Hall, Stephen, in his 1894 Digest, was the first to coin the term "specific intent."

"But in crimes other than certain grades of homicide, 'it is a settled principle that [voluntary] drunkenness is not an excuse for a criminal act committed while the intoxication lasts, and being its immediate result.' Such drunkenness is, in itself, a wrongful act, for the immediate consequences of which the law will hold the party liable. And although there may be no actual criminal intent, the law may hold the party, by construction, guilty of such intent."

*Id.* (citations omitted).[13]

*O'Herrin* expressed the prevailing view of the times, that the defendant's voluntary intoxication is no defense to an offense. Interestingly, the rationale as expressed in *O'Herrin*, that the act of getting drunk is itself wrongful and will be substituted for the criminal intent necessary to sustain a conviction, is still espoused in current decisions. *Cf. Greider*, 385 N.E.2d at 426 (emphasis added), (citations omitted) ("[T]he conventional view is that so-called voluntary intoxication is simply not allowed to negate the elements of voluntariness or moral awareness, because it is said that *when one voluntarily becomes intoxicated, guilt is attached to the intoxication itself, and is then transferred to the criminal act, supplying the required culpability.*")

*O'Herrin* did, however, recognize that evidence of the defendant's voluntary intoxication might be admissible in prosecutions for homicide. The first Indiana decision to specifically address such admissibility was *Aszman v. State*, (1890) 123 Ind. 347, 24 N.E. 123, an appeal from a conviction of first degree murder. In holding it was reversible error to refuse Aszman's tendered instruction on voluntary intoxication, the court stated:

"As a matter of course, the rule is universal that voluntary intoxication is no excuse for crime, nor does it in any degree mitigate or palliate an offense actually committed . . . . .

"Where, however, the essence of a crime depends upon the intent with which an act was done, or where an essential ingredient of the crime consists in the doing of an unlawful act, with a deliberate and premeditated purpose, the mental condition of the accused, whether that condition is occasioned by voluntary intoxication or otherwise, is an important factor to be considered."

*Id.* at 352–53, 24 N.E. at 125 (citations omitted).

The *Aszman* court, quoting from an Ohio court, went on to note the extent such evidence is admissible as a defense:

" '[E]vidence of intoxication is admissible with a view to the question whether a crime has been committed; or, where a crime consisting of degrees has been committed, such evidence may be important in determining the degree.' "

*Id.* at 353, 24 N.E. at 125 (citations omitted). The court went on to hold that evidence of voluntary intoxication would reduce a homicide from murder in the first degree to murder in the second degree.

The first Indiana decision to address the admissibility of evidence of the defendant's voluntary intoxication in offenses other than homicides was the oft-cited case of *Booher v. State*, (1901) 156 Ind. 435, 60 N.E. 156, an appeal from convictions of assault and battery with intent to commit first degree murder and conspiracy to commit first degree murder. In reversing the convictions because the trial court's instruction erroneously informed the jury the accused's voluntary intoxication was not to be considered, the *Booher* court stated that both offenses involved therein required, "[t]he

---

13. *See also Dawson v. State*, (1861) 16 Ind. 428, also involving an appeal from a larceny conviction. The *Dawson* court stated there was no precedent for the admission of evidence of the actor's voluntary intoxication in a larceny prosecution, noting in dictum: "In cases, both civil and criminal, where malice is an ingredient of the charge, it seems that simple intoxication may be given in evidence to rebut it; but this principle does not seem to be extended to the ingredient of intention." Id. at 429. (We suggest the *Dawson* court inappropriately equated "malice" with specific intent as opposed to general intent. See discussion, footnote 23, *infra*, p. ——)

specific intent . . . to commit the murder." *Id.* at 448, 60 N.E. at 161.[14]

From *Booher* to the present, the cases have limited themselves to determining whether the offense involved requires a specific intent.

The plethora of cases and materials on the subject leads to the conclusion that specific intent and the defense of voluntary intoxication is incapable of concise, succinct definition. There are, however, several common factors that can be gleaned from the materials.

■ In the first instance, the defense of voluntary intoxication in Indiana has been narrowly circumscribed, being applicable to only a small number of offenses. In this regard, the defense appears to be applicable in only two types of offenses: (1) offenses wherein the crime depends upon the intent, purpose (not motive), aim, or goal with which an act was done (specific intent); and (2) offenses wherein knowledge of an attendant circumstance is a material element of the crime.

■ The first type of offense is the "classic" "specific intent" crime; it is an offense which proscribes not only the acts or conduct, but further requires that the conduct be done with a state of mind (*i. e.,* intent, purpose (not motive), aim, or goal) above and beyond the mental state (*i. e., mens rea* general intent) required for the conduct itself. *Booher; Aszman.*[15] Typical of this type of offense are those crimes which include the phrase "with intent to," as well as crimes of attempt.

The second type of offense to which the voluntary intoxication defense has been applicable includes those offenses wherein the knowledge of an attendant circumstance is a material element of the crime. An example of such an offense is IC 35–21–4–2 (Burns Code Ed.1975)[16] which provides, in part:

> "Drawing weapon or committing injury upon officer or person assisting him.— Whoever shall . . . commit a bodily injury upon any peace or police officer of this state, . . . knowing him to be such officer . . . , while assaulting, resisting, opposing, obstructing, preventing, impeding or interfering with any peace or police officer, when such officer is arresting or attempting to arrest any person, or while such officer is engaged in the execution of any of the duties of such officer, shall be deemed guilty of a felony."

■ A material element the State must prove under IC 35–21–4–2 is that the accused committed a bodily injury upon a police officer "knowing him to be such officer." If the accused was too drunk to know the "victim" was a police officer, he cannot be convicted of the above offense.[17]

> "[T]he most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the 'actus reus' of the crime."

**14.** The court also noted, with respect to the assault and battery with intent to commit first degree murder charge, the jury could have considered the intoxication as "rebutting the felonious intent to kill and murder" and thus convicted the appellant of "assault and battery only." *Booher v. State*, (1901) 156 Ind. 435, 448, 60 N.E. 156, 161.

**15.** *See* R. Perkins, Criminal Law 662:

"Any mental requirement for guilt of a particular offense which is in addition to an intent to commit the deed which constitutes the *actus reus* of that crime, or which is different from but not distinctly less than such an intent, may be spoken of as a 'special mental element.' The term 'specific intent' has sometimes been employed for this purpose . . . ."

*See also* W. Lafave & A. Scott, Criminal Law § 28, 202:

**16.** Repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977.

**17.** *Cf.* R. Perkins, Criminal Law at 790–91 ("One too drunk to know the essential fact . . . cannot commit a crime which required knowledge for guilt unless he knew before he placed himself in this condition."). *See also* Perkins, *A Rationale of Mens Rea*, 52 Harv.L.Rev. 905, 927 (1939) ["Typical examples of crimes involving a special mental element are: . . . (6) knowingly (such as having a forged instrument with knowledge of the forgery, receiving stolen property knowing it to have been stolen, illegal voting by one 'knowing himself not to be a legal voter.')"].

There are, however, several cases involving the application of the voluntary intoxication defense that do not fall within the two classes of cases to which the defense is applicable and which require close scrutiny. They are *Smith v. State*, (1971) 255 Ind. 687, 266 N.E.2d 216, and *Hicks v. State*, (1975) 164 Ind.App. 235, 328 N.E.2d 219 (rape), *Preston v. State*, (1972) 259 Ind. 353, 287 N.E.2d 347 (public indecency) and *Craft v. State*, (1978) Ind.App., 372 N.E.2d 472 (malicious trespass).

In *Smith*, the defendant challenged his rape[18] conviction arguing his drunkenness

prevented him from forming the necessary specific intent. The court disagreed, holding the defendant failed to carry his burden of proving this affirmative defense. Similarly, in *Hicks*, an appeal from convictions of burglary and rape, this court approved an instruction providing voluntary intoxication as a defense. Thus, both *Smith* and *Hicks* imply that rape is a "specific intent" offense to which the voluntary intoxication defense is applicable.

In *Preston*, the defendant appealed his public indecency[19] convictions, contending he "was too intoxicated to form the neces-

In this regard, our research has failed to reveal any Indiana decisions addressing the issue of whether voluntary intoxication is a defense to a crime requiring knowledge of an attendant circumstance as a material element thereof (such as IC 35–21–4–2). When, however, viewed in light of the subjective inquiry required in "specific intent" offenses (*see* n. 6 of this opinion), it is apparent that some crimes requiring knowledge of an attendant circumstance as a material element thereof have been deemed "specific intent" offenses by implication. For example, the offense of receiving or possession of stolen property, IC 1971, 35–17–5–3(1)(f) and (2)(a) (Burns Code Ed.) (repealed 1976) (current law at IC 35–43–4–2(b) Burns Code Ed., Supp.1979), requires the State to prove, as a material element thereof, the accused's knowledge that the property was stolen. Cases construing this statute have held: " ' . . . While it is true that the requisite knowledge that the goods are stolen may be proved or inferred from the circumstances surrounding the defendant's possession and use of the property in question, *Dobson v. State*, (1960) 239 Ind. 673, 158 N.E.2d 455, it has long been the accepted law of this State that:

'The rule that the possession of stolen property, the proceeds of a larceny, soon after the commission of the offense, unless explained, is *prima facie* evidence of the guilt of the person in whose possession the property is found, does not apply to the offense of receiving stolen property.' *Bowers v. State*, (1924) 196 Ind. 4, 146 N.E. 818.
Therefore, since the possession of the goods, by itself, does not provide sufficient evidence that appellant had knowledge that the goods in question were stolen, we must determine from all the evidence, in compliance with *Wertheimer and Goldberg v. State*, [201 Ind. 572, 169 N.E. 40] *supra*, whether there is substantial evidence of probative value from which the jury could have concluded or inferred beyond a reasonable doubt that every reasonable hypothesis of innocence in regard

to such knowledge on the part of the appellant was excluded.' "
*Wilson v. State*, (1973) 159 Ind.App. 130, 134, 304 N.E.2d 824, 826 (citation omitted).

18. IC 35–13–4–3 provides, in pertinent part: "Whoever has carnal knowledge of a woman forcibly against her will, or of a female child under the age of sixteen [16] years; or whoever being over eighteen [18] years of age, has carnal knowledge of a woman, other than his wife, who is insane, idiotic or feebleminded, he knowing of such condition, is guilty of rape."

19. IC 1971, 35–1–83–3 (Burns Code Ed.) (repealed 1976), provides:
"35–1–83–3[10–2801].   Public indecency.— Whoever, being over fourteen [14] years of age makes an indecent exposure of his or her person in a public place, or in any place where there are other persons to be offended or annoyed thereby, or uses or utters any obscene or licentious language or words in the presence or hearing of any person and continue[s] to use such language after the offended party requests such person to cease, is guilty of public indecency, and, on conviction, shall be fined not less than one hundred dollars [$100] nor more than five hundred dollars [$500], to which may be added imprisonment not exceeding six [6] months; however, whenever the indecent exposure is committed in the presence of a child or children of sufficient age and understanding to comprehend the nature and consequences of sexual attack or abuse and whenever such child or children are under the age of fourteen [14] years and whenever such indecent exposure is committed by a person who is over the age of eighteen [18] years under circumstances which tend to excite the fear of sexual attack or abuse of such child or children, the punishment may be imprisonment for a period of time not to exceed one [1] year, to which may be added a fine not to exceed one thousand dollars [$1,000].

sary intent to commit the crime." The court noted the general rule, that the defense is available only in "crimes involving specific intent," and stated:

> " 'It is a well settled rule that where an offense charged is the violation of a statute, the only intent necessary to the commission of the offense is the intent to do the prohibited thing.' "

Id. at 356, 287 N.E. 2d at 348 [quoting from *Boatman v. State*, (1956) 235 Ind. 623, 628, 137 N.E.2d 28, 30]. The court concluded, however: "[W]e are of the opinion that there is substantial evidence of probative value sufficient to support the finding by the jury that appellant intended his actions." Id. at 356, 287 N.E.2d at 348–49.

In *Craft*, the defendant appealed his convictions of second degree burglary and malicious trespass,[20] arguing the trial court erred in giving an instruction which advised the jury intoxication was not a defense. The court noted that "specific intent was an element to be proved [by the State,]" 372 N.E.2d at 475, and reversed both convictions.

■ The above mentioned cases (*Smith, Hicks, Preston*, and *Craft* ) are troublesome. The offenses under consideration in these cases clearly do not fall within the two classes of cases to which the voluntary in-

toxication defense is applicable. The statutory elements of the offenses do not contain any language of intent, purpose (not motive), aim or goal above and beyond the mens rea required for the conduct itself.[21] Neither do the offenses appear to require knowledge of an attendant circumstance as a material element of the particular crime.[22]

Except for *Craft*,[23] however, these cases do not directly address the issue of whether the offense is a "specific intent" offense. Rather, they may be read as "assuming arguendo the offenses are specific intent and, therefore, voluntary intoxication is a defense, the evidence is sufficient for the jury to have found specific intent existed" cases.

■ The second common thread running through the cases and materials relates to the operation of the defense. That is, so long as the charged offense contains a lesser included offense which does not require a "specific intent," the accused's voluntary intoxication does not operate as a complete defense; but, instead, operates as a mitigating defense, warranting a conviction for one of the lesser included offenses that does not require a specific intent.

For example, in *Brown v. State*, (1959) 241 Ind. 14, 158 N.E.2d 290, the defendant-

**20.** IC 1971, 35–1–66–1 (repealed 1976) provides, in pertinent part:
"Whoever maliciously or mischievously injures or causes to be injured the property of another, or any public property, is guilty of malicious trespass . . . ."

**21.** Indeed, rape has generally been regarded as requiring only a "general intent." *See generally Intoxication as a Criminal Defense*, 55 Colum.L.Rev. 1210, 1214 (1955). Moreover, the court's opinion in *Hicks v. State*, (1975) 164 Ind.App. 235, 328 N.E.2d 219, indicates the defendant was charged with "forcible rape,". although the facts reveal the victim was fourteen (14) years of age, which would warrant a charge of statutory rape. Statutory rape is considered a strict liability type of offense, requiring no mens rea. Cf. *Noble v. State*, (1967) 248 Ind. 101, 108, 223 N.E.2d 755, 758.

**22.** Although not involved in either *Smith v. State*, (1971) 255 Ind. 687, 266 N.E.2d 216, or *Hicks v. State*, (1975) 164 Ind.App. 235, 323 N.E.2d 219, IC 35–13–4–3 does require knowledge of an attendant circumstance when the

charge is for the rape of a woman "who is insane, idiotic or feebleminded." Pursuant to IC 35–13–4–3 the rape of such a mentally deficient woman requires proof the defendant acted "knowing of such condition."

**23.** In *Craft v. State*, (1978) Ind.App., 372 N.E.2d 472, the word "maliciously" may have been construed as referring to an intent, purpose aim, or goal above and beyond the mens rea required for the conduct itself. If such be the case, however, that result is erroneous. The words "malicious or mischievously" have been interpreted as words of mens rea, i. e., "general intent."

> "To characterize an act as having been done maliciously and mischievously amounts to a statement that such act was wrongful and done intentionally, without just cause or excuse . . . ."

*Barber v. State*, (1927) 199 Ind. 146, 149, 155 N.E. 819, 820. *See also Baldock v. State*, (1978) Ind.App., 379 N.E.2d 539.

appellant appealed a robbery conviction alleging, *inter alia*, the trial court erred in refusing his instructions concerning voluntary intoxication. The Supreme Court held the instructions were properly refused because they would have erroneously informed the jury to acquit him if he was so intoxicated as to be incapable of forming the specific intent, stating:

"The offense charged in this case included numerous lesser offenses, the definition of some of which does not include any specific intent. Each of the instructions No. 13, 14 and 15 would have told the jury in effect that if the proof failed to show the greater offense, they should acquit the defendant although as a matter of law they could, if the evidence warranted it, find him guilty of one of the lesser included offenses."

*Id.* at 16–17, 158 N.E.2d at 291.

*See also Brattain v. State*, (1945) 223 Ind. 489, 61 N.E.2d 462.

The third common thread relates to the quantum of proof necessary in order for the defense to operate. As noted in *Greider*, 385 N.E.2d at 426, in order for the defense to operate: "The defendant must have been so intoxicated as to be incapable of entertaining the required specific intent." [24]

Some commentators have criticized the above quoted formulation, suggesting the rule so framed renders the defense illusory in nature; because, to be so intoxicated as to be incapable of entertaining the specific intent would, if literally applied by the trier of fact, require one to be unconscious before he could avail himself of the defense.[25] It would appear, however, as though the Indiana Supreme Court itself may have taken steps to moderate this aspect of the judicially created defense of voluntary intoxication.

For example, in the recent decision of *Pettit v. State*, (1979) Ind., 396 N.E.2d 126, the defendant-appellant appealed his conviction of Unlawful Dealing in a Controlled Substance [26] alleging, *inter alia*, "that evidence of intoxication was introduced at trial" and, therefore, the trial court erred in refusing his tendered instruction on the subject. The Court noted the only evidence presented on the matter was the following testimony elicited from an informant on cross-examination:

"Q. Was [defendant] under the influence of anything then?

A. As far as I * * * I believe so.

Q. Pretty far under?

A. Not as much as I've seen him before.

Q. But, he was pretty far under that day?

A. Just his average day." [27]

The *Pettit* Court went on to note there was no further inquiry or testimony as to

**24.** *See also Booher v. State*, (1901) 156 Ind. 435, 447, 60 N.E. 156, 161 (citations omitted): "[T]he drunkenness of the defendant, in order to rebut such criminal intent, must be of such a degree as to deprive him of the power to deliberate or form the necessary design or guilty intent; otherwise, it is not available. Or, in other words, . . . mere intoxication of the accused, in the absence of such mental incapacity resulting therefrom as will render a person incapable of thinking deliberately and meditating rationally in forming the guilty design or intent cannot be regarded as sufficient. There must be, as a result of such intoxication, the absence of that self-determining power which in a sane mind makes it conscious of the real nature of its own purpose, and capable of resisting wrong impulses."

**25.** *See, e. g., Intoxication as a Criminal Defense*, 55 Colum.L.Rev. 1210, 1215 (1955):

"Often in cases where a crime involving specific intent is at issue, the rule as to the effect of intoxication is framed in terms of mental capacity to form the intent rather than in terms of whether the requisite state of mind was actually present. It appears that a significant difference in result will occur depending upon which formulation a court uses. Since the degree of intoxication which would render a person mentally incapable of entertaining the requisite intent is unlikely to be short of that which renders him unconscious, if the jury were to follow such an instruction literally, it is doubtful that intoxication could ever be a defense."

**26.** IC 35–24.1–4.1–2 (Burns Code Ed.1975) (repealed).

**27.** *Pettit v. State*, (1979) Ind., 396 N.E.2d 126, 130.

what the defendant-appellant's average day was and held:

"No evidence was presented tending to show that defendant was intoxicated to the point that he *lacked the ability to appreciate the ethical quality of his actions or to control those actions*. Thus, no instruction on intoxication was required." [28]

Id. at 130–31 (emphasis added).

The language used in the emphasized portion of *Pettit* is substantially different from the language used in past decisions, as evidenced in *Greider*. Indeed, the language employed in *Pettit* appears similar to the terminology utilized in insanity cases. Moreover, if such language could be utilized in the form of an instruction, the criticism previously mentioned, pertaining to one having to be unconscious to avail himself of the defense, will no longer be applicable. A test making the defense operable "[if one was so intoxicated] that he lacked the ability to appreciate the ethical quality of his actions or to control those actions" would clearly be easier for a defendant to sustain than the test formulated in prior cases, making the defense operable only when the defendant was "intoxicated to the extent that he was incapable of entertaining the requisite specific intent."

■ Turning to the case *sub judice*, we first observe that sodomy is not a "specific intent" offense. The statute [29] does not require that the conduct be done with a state of mind (*i. e.*, intent, purpose [not motive], aim or goal) above and beyond the mental state (*i. e., mens rea*) required for the conduct itself; nor does it require knowledge of an attendant circumstance as a material element. Thus, the accused's voluntary intoxication is not a defense to sodomy.[30]

■ Assault and battery with intent to gratify sexual desires, on the other hand, is a "specific intent" offense. The statute requires the unlawful touching to be accomplished "with the intent to gratify the sexual desires or appetites of the offending person." [31] Thus, the accused's voluntary in-

---

**28.** The standard to be utilized by the courts in ascertaining whether the accused is entitled to an instruction on voluntary intoxication was set forth in the recent decision of *Williams v. State*, (1980) Ind., 402 N.E.2d 954 (the standard to be applied by trial and appellate judges in evaluating the evidence of intoxication for the purpose of determining whether an instruction on the defense of intoxication is warranted is whether the evidence of intoxication, if believed, is such that it could create a reasonable doubt in the mind of a rational trier of fact that the accused entertained the requisite specific intent).

**29.** IC 35-1-89-1 (Burns Code Ed.) (repealed 1976) provides:

"Sodomy.—Whoever commits the abominable and detestable crime against nature with mankind or beast; or whoever entices, allures, instigates or aids any person under the age of eighteen (18) years to commit masturbation or self-pollution, shall be deemed guilty of sodomy, and, on conviction, shall be fined not less than one hundred dollars [$100] nor more than one thousand dollars [$1,000], to which may be added imprisonment in the state prison not less than two [2] years nor more than fourteen [14] years."

**30.** *See* Am.Jur.2d, *Sodomy*, § 18, at 820 (1973):

"Voluntary drunkenness is generally not a defense to a charge of sodomy . . . ."

*See also* 81 C.J.S. *Sodomy* § 4, at 652 (1977)

"A specific intent is not an essential element of the statutory crime of sex perversion; only a general criminal intent is required for that crime and for sodomy."

**31.** IC 35-1-54-4 (Burns Code Ed.) (repealed 1976) provides:

"Assault and battery.—Whoever in a rude, insolent or angry manner, unlawfully touches another, is guilty of an assault and battery, and on conviction, shall be fined not more than one thousand dollars [$1,000], to which may be added imprisonment in the county jail not exceeding six months: Provided, That whenever in the commission of the offense any person removes, tears, unbuttons, unfastens, or attempts to remove, tear, unbutton or unfasten any clothing of any child who has attained his or her twelfth birthday but has not attained his or her seventeenth birthday, or fondles or caresses the body or any part thereof of such child with the intent to gratify the sexual desires or appetites of the offending person or, under circumstances which frighten, excite, or tend to frighten or excite such child, the punishment shall be imprisonment in the Indiana state prison for a period of time of not less than one [1] year nor more than five [5] years: Provided further, That if such child has not attained his or her twelfth birthday, the punishment for such

toxication is available as a defense to assault and battery with intent to gratify sexual desires.[32]

We are of the opinion, however, that Carter was not so inebriated as to be incapable of entertaining the specific intent to gratify sexual desires. It is true there was evidence Carter consumed twelve (12) to thirteen (13) 12 oz. beers over a span of thirteen (13) hours and he had a history of alcohol intoxication problems with memory lapses. Other testimony, however, described Carter at approximately 1:00 a. m. or 1:30 a. m. as walking, talking, and "not so inebriated that he was falling-down drunk." Furthermore, Mrs. Carter estimated that Carter, having arrived around 3:00 a. m., was at the residence where the acts took place approximately 45 minutes; that she drove him home and he went to work an hour later. Moreover, the evidence also reveals the acts of Carter were done quietly and covertly in a manner not to disturb the other children sleeping in the bedroom.

## V

Carter's final contention is the evidence was insufficient to support the two convictions. By his arguments, however, Carter would have this court rejudge the victim's credibility and reweigh the evidence. This we cannot do.

This court does not reweigh the evidence nor judge the credibility of witnesses. *McCormick v. State*, (1978) Ind. App., 382 N.E.2d 172. Rather, we consider the evidence most favorable to the verdict, together with all reasonable inferences which may be drawn from that evidence. *Id.* If there is substantial evidence of probative value to support each element of the offense, the judgment will be affirmed. *Taylor v. State*, (1979) Ind.App., 391 N.E.2d 1182.

The facts most favorable to the State reveal Carter entered a bedroom in which the victim was asleep in bed. He went to her, turned her over on her back by physically lifting her, pulled down her panties, unzipped his trouser fly, and then inserted his penis, tongue, and finger into her vagina. This evidence was sufficient to support Carter's convictions of sodomy and assault and battery with intent to gratify sexual desires.[33]

Judgment affirmed.

SULLIVAN, J., concurs.

BUCHANAN, C. J., concurs in result.

---

offense shall be imprisonment in the Indiana state prison for a period of time of not less than two [2] years nor more than twenty-one [21] years."

32. It is to be noted, however, that voluntary intoxication is not a complete defense to assault and battery with intent to gratify sexual desires. Rather, voluntary intoxication negates the specific intent only and, therefore, an accused may still be found guilty of assault and battery only. *Booher v. State*, (1901) 156 Ind. 435, 60 N.E. 156.

33. We advise the reader of recent significant events. In *Williams v. State*, (1980) Ind., 402 N.E.2d 954, the Supreme Court held robbery as presently defined in IC 35-42-5-1 (Burns Code Ed., Repl.1979) is a specific intent offense because of the inclusion of the word "knowingly." *See also Williams v. State*, (1979) Ind., 393 N.E.2d 149; *Pardue v. State* (1980), Ind., 403 N.E.2d 1072. We respectfully suggest this interpretation of "knowingly," which we believe refers to the prohibited conduct, is general intent or *mens rea*, as opposed to specific intent. Therefore, *Williams*, 402 N.E.2d 954, considerably expands the availability of the intoxication defense. However, this expansion is but temporary due to the 1980 amendment, Acts 1980, P.L. 205:

"(b) Voluntary intoxication is a defense only to the extent that it negates an element of an offense referred to by the phrase 'with intent to' or 'with an intention to.' "